UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| POINT RUSTON, LLC, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>PACIFIC NORTHWEST REGIONAL COUCIL OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, et al.,<br><br>　　　　Defendants. | CASE NO. C09-5232BHS<br><br>ORDER DIRECTING DEFENDANTS TO SHOW CAUSE BEFORE THE COURT RULES ON PLAINTIFFS' MOTION TO COMPEL AND DENIES DEFENDANTS' MOTION FOR PROTECTIVE ORDER |

This matter comes before the Court on Plaintiffs' motion to compel production of documents (Dkt. 95) and Defendant Jobs With Justice Education Fund of Washington State's ("JWJ") motion for protective order to prevent discovery or production of privileged records (Dkt. 101). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby denies in part and defers in part both motions and orders Defendants to show cause as discussed herein.

## I. PROCEDURAL HISTORY

On April 21, 2009, Plaintiffs filed their complaint against Defendants. Dkt. 1. On May 22, 2009, Defendants answered (Dkt. 20) and then filed an amended answer on May

29, 2009. On June 17, 2009, the case was reassigned to the undersigned. Dkt. 32. On September 10, 2009, Plaintiffs filed a motion to compel production of documents. Dkt. 79. On September 21, 2009, JWJ filed a response to this motion (Dkt. 83) and Plaintiffs replied on September 25, 2009 (Dkt. 88). On September 30, 2009, the Court denied Plaintiffs' motion to compel (Dkt. 79) but permitted renewal of the motion should it become necessary. Dkt. 90.

On October 27, 2009, Plaintiffs renewed their motion to compel production of documents (Dkt. 95) for which a response was filed on November 9, 2009 (Dkt. 109) and Plaintiffs replied on November 13, 2009 (Dkt. 117). On October 29, 2009, JWJ filed a motion for protective order (Dkt. 101) regarding the same materials in Plaintiffs' motion to compel (Dkt. 95). On November 9, 2009, Plaintiffs filed a response to the motion for protective order (Dkt. 106), and on November 13, 2009, JWJ replied (Dkt. 111).

## II. FACTUAL BACKGROUND

This matter arises out of a general construction contractors' allegations that the Defendants engaged in secondary boycott activities and engaged in several state law violations, to include such illegal activity as trespass and defamation. *See generally* Dkt. 76 (setting out detailed factual record). This Court has jurisdiction over the secondary boycott claim based on federal question jurisdiction under 28 U.S.C. § 1331 and over the supplemental state law claims pursuant to 28 U.S.C. § 1367. *See* Dkt. 56 (discussing the jurisdictional basis of this case).

Now before the court is a dispute between Plaintiffs and JWJ regarding whether certain requested documents should be disclosed or whether and to what extent they are protected under claims of the First Amendment associational privilege, attorney-client privilege, or the work-product doctrine. *See, e.g.,* Dkts. 95, 109, and 117. Plaintiffs argue for disclosure of the documents and JWJ disagrees. JWJ, instead, urges the Court to enter a protective order with respect to the documents (Dkt. 101).

This dispute was the subject of a prior motion to compel that was submitted by Plaintiffs. *See* Dkt. 79. In its order denying that motion to compel, the Court noted the following regarding this matter:

> [JWJ] assert[s] in their response (Dkt. 83) that they will produce a privilege log by October 7, 2009. The Court expects that JWJ will comply with their own deadline and will not use this privilege log as an opportunity to assert privilege on a wholesale basis. Instead, the Court expects JWJ to use the privilege log to dutifully inform Plaintiffs as to what documents or other requested materials JWJ believes are protected under privilege, whether it be associational or otherwise.
> Once the October 7, 2009, privilege log is provided to Plaintiffs, Plaintiffs will have an opportunity to review the log and determine if renewal of this motion is necessary.

Dkt. 90 at 2.

Plaintiffs have deemed it necessary to renew their motion to compel the disclosure of the documents that JWJ has asserted privilege over. *See* Dkt. 95 (renewed motion to compel). JWJ has filed a counter motion for protective order. Dkt. 101. JWJ has since submitted two sets of documents to the Court for an *in camera* review. One set includes redacted documents, which have been provided to Plaintiffs by JWJ. The other set includes documents that JWJ believes to be completely protected under the work-product doctrine or attorney-client privilege. The parties dispute whether full disclosure of both sets of documents is required. *See, e.g.,* Dkts. 95, 101.

### III. DISCUSSION

**A.   Choice of Law**

As a threshold matter, the parties dispute whether federal privilege law or Washington State privilege law applies in this case. *Compare* Dkt. 109 at 3 (Defendants claiming Plaintiffs ignore Washington law regarding application of associational privilege) with Dkt. 117 at 2 (Plaintiffs setting out case law in favor of applying federal privilege rules). The rule on this issue is well settled in the Ninth Circuit: "Where there are federal question claims and pendent state law claims present, *the federal law of privilege applies*." *Agster v. Maricopa County*, 422 F.3d 836, 839-40 (9th Cir. 2005)

(holding that federal courts do not apply state law privileges in federal cases unless the court creates a new privilege as a matter of federal common law) (emphasis added) (citing *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 104 (3rd Cir. 1982) (holding that where state law claims overlap with federal claims in a federal question case such that particular documents are relevant to both the state and federal claims, federal privilege law also applies)); *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1056 (S.D. Cal. 1999) ("The need for consistency requires federal courts to apply federal privilege policies, rather than state privilege law, where evidence goes to both state and federal claims.").

Although applying federal privilege in federal question cases appears to be the general rule, state privilege law has been applied in at least one case involving a federal question. *See Platypus Wear, Inc. v. K.D. Co., Inc.*, 905 F. Supp. 808, 811 (S.D. Cal. 1995). However, in *Platypus*, the court held that state privilege law applied to state law claims in a federal question case where the evidence sought, went only to state law theories of liability and the plaintiff had advanced no theory under which the evidence could be relevant to the federal claims in the case. *Id*.

Here, the Court has previously ruled that this matter involves a federal question pursuant to 28 U.S.C. § 1331 and state law questions over which the Court has exercised its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Dkt. 56. The Court has also previously found that "Plaintiffs have demonstrated that the state claims asserted . . . and the federal claim . . . asserted [in this matter] arise from a common nucleus of operative fact." Dkt. 56 at 9. Put another way, a link or overlap exists between the facts of the state and federal claims. *See id*. at 8. The Court's prior ruling makes it apparent why this case is distinguishable from *Platypus. See* 905 F. Supp. at 811.

Therefore, the Court finds that the federal law of privilege applies in this matter.

**B.    First Amendment Associational Privilege**

JWJ asserts it is entitled to a First Amendment associational privilege in this matter to protect the disclosure of certain documents that Plaintiffs have requested in the course of discovery. *See* Dkt. 109 at 6. The Constitution guarantees "a right to associate for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984). Those First Amendment protections apply in the context of discovery orders. *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987).

The Supreme Court has recognized that the First Amendment creates a qualified associational privilege from disclosure of certain information in discovery. *NAACP v. Alabama*, 357 U.S. 449, 462 (1958) (holding that it would violate the associational privilege in certain circumstances to disclose membership lists). In *NAACP*, the seminal case on the associational privilege, the Supreme Court held that the NAACP had standing to assert the associational rights of its members. 357 U.S. at 358-60; *Nat'l Commodity & Barter Ass'n v. Archer*, 31 F.3d 1521, 1530 (10th Cir. 1994) (noting that *NAACP* demonstrates that an "association itself" may assert the rights of its members and resist inquiry into its membership lists).

In evaluating claims of associational privilege in the discovery context, "district courts have generally employed a burden-shifting analysis." *Wyoming v. United States Dep't of Agric.*, 239 F. Supp. 2d 1219, 1236 (D. Wyo. 2002). First, the party asserting the privilege must demonstrate, or make a prima facie showing, that the privilege applies. *Id.*

**1.    Privilege Applicability**

JWJ argues in its response that, to make its prima facie showing, it need only show some probability of a constitutional infringement. Dkt. 109 at 4 (relying on, e.g., *Right-Price Recreation, LLC v. Cannel's Prairie Cmty. Council*, 105 Wn. App. 813, 822

(2001)). However, as noted above, Washington State's privilege rules are not binding in a case such as this, where the court has original jurisdiction based on a federal question.

Under federal law, it appears that the qualified First Amendment associational privilege applies in the discovery context when disclosure "entails the likelihood of a substantial restraint upon the exercise [of an organization's] members of their right to freedom of association." *NAACP v. Alabama*, 357 U.S. 449, 462, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958). Thus, if the compelled disclosure is likely to adversely affect the ability of an organization and its members to collectively advocate for the organization's beliefs by inducing members to withdraw from the organization or dissuading others from joining the organization because fear of exposure of their beliefs will lead to threats, harassment, or reprisal, it runs afoul of the First Amendment. *Id.* at 462-63. The type of threats, harassment, and reprisal discussed by the Supreme Court in *NAACP* are threats of physical coercion or bodily harm, economic harm or reprisal, loss of employment, and other public manifestations of hostility. *Id.* at 462.

Here, although JWJ has repeatedly but incorrectly urged the Court to apply state privilege law, as opposed to federal privilege law, the Court finds it has still made the required prima facie showing that the privilege applies, which shifts the burden to Plaintiffs. *See* Dkt. 109. The Court bases this finding on the declaration (Dkt. 84, "Carton Decl. 1") and the supplementary declaration (Dkt. 112, "Carton Decl. 2") of Jacob Carton. It is unnecessary to discuss each and every example described in the Carton declarations. Rather, the Court notes that the examples given establish the requisite likelihood of threats of physical coercion or bodily harm, economic harm or reprisal, loss of employment, and other public manifestations of hostility. *See, e.g.,* Carton Decl. 1 at ¶¶ 6-16. *NAACP*, 357 U.S. at 462. Notably, Plaintiffs neither refute nor address this issue, either in their motion to compel or in their response to JWJ's motion for protective order. *See generally* Dkts. 95, 117, and 106, respectively.

Therefore, for the foregoing reasons, the Court finds that the privilege applies.

ORDER - 6

**2. Balancing Test**

To overcome JWJ's prima facie showing, Plaintiffs must show how the following factors weigh in favor of disclosure: (1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information. *Grandbouche*, 825 F.2d at 1466 (discussing the *Silkwood* balancing test). Put otherwise, it is on the Plaintiffs, not JWJ, to establish that these factors weigh in their favor. The Tenth Circuit also noted in *Silkwood* that, "[f]rom these criteria, it has to be concluded that compulsory disclosure in the course of a 'fishing expedition' is ruled out in the First Amendment cases." 563 F.2d at 438.

**i. Relevance**

With respect to relevance, the information sought must be more than minimally relevant to the claims made in this lawsuit. When a claim of associational privilege is asserted, the relevance standard is more exacting than the minimal showing of relevance under Fed. R. Civ. P. 26(b)(1). The *Silkwood* balancing test required that, to be relevant, the information must go to the heart of the matter and be of a certain relevance. *See* 563 F.2d at 438; *see also Grandbouche*, 825 F.2d 1466 (combining these factors into the single factor of relevance).

The Court having looked at the set of disclosed but redacted documents, is unable to find at this point that Plaintiffs have established the necessary level of relevance that would permit disclosure of the redacted information in light of the privilege's applicability. For example, Plaintiffs contend that document JWJ 005983 "shows that a particular individual was assigned to look 'for action opportunities to expose potential Pt. Ruston buyers to hazards in the P.R. community." While the document does contain this language, the relevance that it has to the claims asserted by Plaintiffs appears tenuous at this juncture. As JWJ points out, the name at the top of the document appears to be that of a research assistant. Dkt. 111 at 4 (discussing JWJ 005983). JWJ points out other similar examples. *Id*. at 4-5. Simply put, Plaintiffs' relevance arguments need to be more focused

before the Court would order the release of the information. Therefore, this factor weighs in favor of JWJ.

### ii. Necessity

With respect to necessity, because the Court finds that Plaintiffs have not shown an adequate level of relevance regarding the documents sought, it also finds that Plaintiffs have not met their burden of showing a need for this minimally relevant information. Therefore, this factor tips in favor of JWJ.

### iii. Availability

With respect to availability, Plaintiffs have failed to show that the information they seek is clearly unavailable from other sources. Plaintiffs have recited the efforts engaged in to obtain the particular information now sought in their motion to compel, but they do not provide any evidence supporting such assertions. *See* Dkt. 106 at 8. Further, Plaintiffs assert that JWJ has not suggested alternative means of obtaining this information. *Id*. However, it is the burden of the Plaintiffs, not JWJ, to make a showing that the evidence is clearly unavailable from other sources. *See, e.g., Grandbouche*, 825 F.2d at 1466. Therefore, this factor tips in favor of preventing disclosure.

### iv. Nature

With respect to the nature of the information, it is privileged and central to First Amendment values. The information sought from the redacted documents disclosed is the names of members and organizations that are connected to JWJ. Although releasing these names would not result in the disclosure of a member or financial contributor list per se, stripped to its essence, it does not appear that the disclosure of the redacted information would be any different; Plaintiffs would still have improper access to a set of member names. *See, e.g., NAACP*, 357 U.S. 449. Therefore, this factor also tips in favor of JWJ.

### v. Conclusion

The Court finds that Plaintiffs have not met their burden of showing that the balance of the factors weighs in their favor. It may be that Plaintiffs will be able to meet

their burden as this case progresses. However, before the Court would require disclosure in the face of a qualified First Amendment associational privilege, Plaintiffs must become more focused in showing that, once the appropriate factors are balanced, these documents should be disclosed without redaction.

Therefore, the Court denies Plaintiffs' motion to compel (Dkt. 95) without prejudice on this issue. The Court also denies JWJ's motion for protective order (Dkt. 101) on this issue but finds that JWJ does not have to produce an unredacted version of the particular documents at this time.

## C. Work-Product Doctrine, Attorney-Client Privilege

Regarding the set of documents for which JWJ has claimed protections under the attorney-client privilege or the work-product doctrine, JWJ argues these documents should not be disclosed. *See, e.g.,* Dkt. 101. Plaintiffs do not challenge the redacting of JWJ 006848, 006906, and 007098 "to the extent they reflect communications with Mr. Iglitzen" (a JWJ attorney); thus, these are not at issue at this time. However "[P]laintiffs do challenge [JWJ's] redacting or withholding documents pursuant to the work-product doctrine." Dkt. 106.

JWJ has submitted a set of documents for which it claims protection under the work-product doctrine. JWJ has also filed the declaration of Jacob Carton in which he declares these documents, such as JWJ 006765, were created after conversations with Mr. Iglitzen. However, the standard for asserting work product is not that a document was created after discussions with an attorney. Rather, the work-product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). Further, parties claiming protection under the work-product doctrine must "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that . . . will enable other parties to assess the claim. 26(b)(5)(ii).

The Court is not convinced that each of the documents for which JWJ claims protections under the work-product doctrine may properly be considered work product. For example, JWJ 006765 does not appear to the Court, based on its *in camera* review, to be a document prepared in anticipation of litigation or otherwise pursuant to the work-product doctrine. *But see* Carton Decl. ¶ 13(g) (noting the document was produced after conversing with Mr. Iglitzen). Instead, this JWJ 006765 appears to be identifying who will be a part of what initiatives and what information and materials may be helpful in carrying out such initiatives. It does not appear to the Court that this document has anything to do with anticipating or preparing for litigation, which is required under Fed. R. Civ. P. 26(b)(3)(A). Moreover, this does not appear to be an instance of potentially improper designation that is limited to JWJ 006765. Further, describing the document as "[w]orkproduct on plan for public campaign" does not appear to be sufficient to enable Plaintiffs to assess the claim. *See* Dkt. 101 at 9 (reproducing privilege log); *see also* Fed. R. Civ. P. 26(b)(5)(ii) (requiring adequate descriptions of documents withheld)

Based on its *in camera* review, the Court is inclined to require disclosure of these documents withheld on the basis of work product, unless JWJ can be more focused in establishing with some particularity why or how these documents are actually work product or subject to some other protection. The Court will, in any event, permit redaction based on associational privilege as discussed above.

Accordingly, the Court orders JWJ to show cause why these documents it claims are protected under the work-product doctrine should not be produced. JWJ will be permitted ten pages on this issue. The Court defers ruling on Plaintiffs' motion to compel (Dkt. 95) and JWJ's motion for protective order (Dkt. 101) on this issue, pending the resolution of the Court's show cause order.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that

1. Plaintiffs' motion to compel (Dkt. 95) is **DENIED** in part and **DEFERRED** in part as discussed herein.

2. JWJ's motion for protective order (Dkt. 101) is **DENIED** in part and **DEFERRED** in part as discussed herein.

3. JWJ must **SHOW CAUSE** no later than January 13, 2010, why the remaining portion of Plaintiffs' motion to compel (Dkt. 95) should not be granted.

DATED this 18th day of December, 2009.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 11