1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

POINT RUSTON, LLC, et al.,

           Plaintiffs,

     v.

PACIFIC NORTHWEST REGIONAL
COUNCIL OF THE UNITED
BROTHERHOOD OF CARPENTERS
AND JOINERS OF AMERICA, et al.,

           Defendants.

CASE NO. C09-5232BHS

ORDER DENYING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
AGAINST SILVER CLOUD;
GRANTING IN PART AND
DENYING IN PART SILVER
CLOUD'S MOTION FOR
PARTIAL SUMMARY
JUDGMENT ON LIABILITY

      This matter comes before the Court on Defendants' (collectively, the

"Carpenters") motion for summary judgment (Dkt. 216) and Plaintiff Silver Cloud's

motion for partial summary judgment (Dkt. 355). The Court has considered the pleadings

filed in support of and in opposition to the motions and the remainder of the file and

hereby denies the Carpenters' motions for summary judgment and grants in part and

denies in part Silver Cloud's motion for partial summary judgment on the issue of

liability for its § 303 and defamation claims, as discussed herein.

ORDER - 1

# I. PROCEDURAL HISTORY

On April 23, 2010, the Carpenters filed their motion for summary judgment against Silver Cloud under section 303 of the Labor Management Relations Act ("LRMA") of 1947, 29 U.S.C. § 187.  Dkt. 216. On May 21, 2010, the Carpenters filed their motion for summary judgment against Silver Cloud on the defamation claim. Dkt. 268. On July 12, 2010, Silver Cloud filed its cross motion for partial summary judgment on its section 303 claim and its defamation claim. Dkt. 355. The Court has reviewed all the briefing on these motions.

# II. FACTUAL BACKGROUND

Unless otherwise discussed herein, the following facts are undisputed:

Point Ruston, LLC ("Point Ruston), is a general construction contractor and property developer formed to provide management, development, and oversight services for the Point Ruston project. Dkt. 76. The Point Ruston project is a master planned, mixed-use development constructed on a 97-acre site in Ruston, WA, along on the shores of the Puget Sound, adjacent to Tacoma, WA.

From 1890 to 1986 the 97-acre parcel contained a facility that functioned as a lead and copper smelter. *Id*. Asarco was the owner of the facility for the vast majority of those years, with the site producing almost 10% of the nation's copper. *Id*. In 1981, the Environmental Protection Agency ("EPA") included the Asarco property on their interim priority list. *Id*. Two years later, the EPA officially designated the land as a superfund site on the National Priorities List. According to the EPA, the parcel contains certain levels of arsenic and lead. *Id.* (citing Dkt. 43 at 6 (Declaration of Loren Cohen)). In 2006, Point Ruston purchased the property from Asarco during a bankruptcy proceeding, and

assumed Asarco's environmental remediation liabilities for the property and other adjacent sites. *Id.*

In the spring of 2008, Point Ruston entered into an agreement with Rain City Contractors, Inc. ("Rain City") to provide construction of concrete foundations and other concrete structures. While all other contractors retained by Point Ruston in 2008 were union contractors, Rain City was not a unionized employer. After Point Ruston contracted with Rain City, Regional Council, a labor organization, informed Point Ruston that it had a labor dispute with Rain City, "and that if Point Ruston continued to use Rain City on the project then the Regional Council would have a dispute with Point Ruston as well." Dkt. 1 at 7 (Plaintiffs' complaint).

In February and March of 2009, the Carpenters began demonstrating by placement of large banners and leafleting to hotels owned by Silver Cloud, in Seattle, Washington (Weise Tr. 11:3-7). Silver Cloud owns hotels and has an option to build a hotel on the Point Ruston property at some point in the future (Korbein Decl. ¶ 2, Dkt. 245). No facts have been presented to establish that Silver Cloud has any relationship with Rain City (Korbein Decl. ¶ 2, Dkt. 245).  At all relevant times, Silver Cloud had not exercised its option to build a hotel at the Point Ruston site. (Korbein Decl ¶ 2, Dkt. 245).

**The Letter.** On February 4, 2009, the Carpenters sent Jim Korbein ("Korbein"), CEO of Silver Cloud, a notice regarding its labor dispute with Rain City. This letter informed Korbein that, if Silver Cloud used Rain City to perform work on the hotel for which it had an option to build at the Point Ruston site, it too would have a labor dispute with the Carpenters. Dkt. 356-2 at 34. The letter stated that the Carpenters wanted Korbein "to use [its] managerial discretion to **not allow** Rain City . . . to perform any work on any of your projects unless and until they generally meet area labor standards . . .

.." *Id*. (emphasis in original). The letter further informed Korbein that the Carpenters would be engaged in "lawful demonstrations, including jobsite picketing and highly visible lawful banner displays, including distribution of handbills at the jobsite and premises of property owners, developers, general contractors, leasing/sales offices, tenants, clients and other firms involved with any project where sub-area standards contractors are employed." *Id*. The letter cautioned that the Carpenters did "not want Silver Cloud . . . to *become embroiled* in our labor dispute. That is why as a courtesy we are providing you with this notice." *Id*. at 35 (emphasis added). The letter concluded by stating that Silver Cloud could avoid "becoming publicly involved in this dispute" by agreeing to "comply with the requests" made in the letter: "Doing so will provide the greatest protection against Silver Cloud . . . ." *Id*. The Carpenters do not dispute that they sent this letter containing this language. Dkt. 216 at 5-6.

**The Banner.** Between February 11, 2009 and March 23, 2009, the Carpenters set up a large banner at the Silver Cloud stadium hotel in Seattle, located adjacent to the Mariner's and Seahawk's sports stadiums. This hotel location is over 30 miles from the Point Ruston site. The Carpenters used three people to hold the banner up and on occassion lashed the sign to the light poles. The banner contained three large block print statements, each one on top of the other: "POINT RUSTON, SILVER CLOUD HOTEL, GOT ARSENIC?" (Weis Dep. Ex. 2). At each end of the banner, in smaller print, was the statement "Labor Dispute." The Banner did not include Rain City's name. The Carpenters do not dispute that this banner was used as described thus far.

**The Handbill.** On February 11, 2009 and continuing through March 23, 2009, the Carpenters handbilled passers-by of the Silver Cloud hotels. The handbill at issue begins with extra-large print proclaiming "**SHAME ON Silver Cloud Inns & Hotels For**

**Desecration of the American Way of Life**." Dkt. 356-2 at 33. In smaller font size, the relevant portion of the handbill's body reads as follows:

> Shame on SILVER CLOUD INN for contributing to the erosion of area standards for area carpenter craft workers. While SILVER CLOUD INN may not be the entity that chose the "Rat" [Rain City], they are certainly choosing to benefit from the "Rat's" practices. [Carpenters] has a labor dispute with RAIN CITY . . . which is a subcontractor for POINT RUSTON . . . . RAIN CITY . . . . Please call JIM KORBEIN, CEO with SILVER CLOUD . . . and tell him that you want him to do all he can to change this situation and see that Area Standards are met on all his construction projects.

Dkt. 356-2 at 33.[1]

### III. DISCUSSION

**A.     Summary Judgment**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt").

---

[1]Silver Cloud currently has two existing hotels that are the subject of this action, the Silver Cloud Broadway, located in the Capitol Hill neighborhood, and the Silver Cloud Stadium hotel, located next to the sports stadiums in Seattle's downtown area. Silver Cloud has focused its arguments on the Carpenters' activities occurring at the Silver Cloud Stadium, though similar activities occurred at the Broadway location as well.

*See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Cross Motion, Section 303 Claim – Silver Cloud**

Silver Cloud moved the Court in its cross motion (Dkt. 355) to grant partial summary judgment on the issue of liability on the basis that the Carpenters' actions violated 29 U.S.C. §15 8(b)(4) ("§ 8(b)(4)"). Specifically, Silver Cloud alleges that the Carpenters' letter to Korbein, its bannering, and its leafleting were collectively designed to force Silver Cloud "to cease doing business" with Rain City. *See, e.g.*, Dkt. 355 at 3-14.

"Congress has provided a judicial damage remedy for illegal secondary activity in Section 303." *Shepard v. N.L.R.B.*, 459 U.S. 344, 351 (1983). Section 303(b) provides that whoever is injured in his business or property because of a violation of § 303(a) may sue in a federal district court "and shall recover the damages by him sustained and the cost of the suit." *Id.* at 351. To determine whether activity is secondary and violates the law, the facts must be viewed in the totality of the circumstances. *Constar, Inc., v. Plumbers Local 447*, 748 F.2d 520, 522 (9th Cir. 1984).

Section 303(a) of the LMRA makes it unlawful for a union to engage in any activity or conduct defined as an unfair labor practice under § 8(b)(4) of the of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b)(4), which prohibits secondary boycotts. Section 8(b)(4) provides in pertinent part:

> It shall be an unfair labor practice for a labor organization or its agents . . . (ii) to threaten, coerce, or restrain any person . . ., where in either case an object thereof is-
>
>                                     \*\*\*
>
> (B) forcing or requiring any person to cease . . . *doing business with any other person* . . . .

*Id*. at 347 (quotations omitted).

Generally, a union's activities (i.e., demonstrations) are protected by the First Amendment. However, "[t]he Supreme Court has held repeatedly that activities covered by § 8(b)(4)(ii) . . . are not sheltered by the first amendment . . . ." *See, e.g., Boxhorn's Big Muskego Gun Club, Inc. v. Electric Workers Local 494, et al.*, 798 F.2d 1016, 1021 (7th Cir. 1986); *see also Int'l Longshoremen's Ass'n v. Allied Int'l, Inc.*, 456 U.S. 212, 226-27 (1982). Thus, if the Carpenters' actions violated § 8(b)(4)(ii)(B), the first amendment will not shield their actions from a valid § 303 claim for damages. *See id.*

Absent exceptions not applicable here, a union will be responsible for the conduct of its agents when that conduct gives rise to a § 303 claim. *See, e.g., Hasbrouck v. Sheet Metal Workers Local 232*, 586 F.2d 691, 693 (9th Cir. 1978) (applying common law agency to hold that a union is liable for the acts of its agents). A labor union is also accountable for the foreseeable consequences of its conduct and that of its agents. *See, e.g., Int'l Longshoremen's Ass'n, AFL-CIO v. Allied Intern., Inc.*, 456 U.S. 212, 224 (1982) (*Longshoremen*). The Carpenters dispute whether their agents engaged in any conduct that would give rise to a § 303 violation. This is the question before the Court.

The Carpenters contend they are entitled to demonstrate as they have demonstrated in this case with respect to Silver Cloud; provided however, the secondary demonstrations are peaceful and do not involve picketing. *See generally* Dkt. 216. This is generally true.

In opposition, Silver Cloud contends that "[t]he prohibition [set out in § 8(b)(4)] was drafted broadly to protect neutral parties, the helpless victims of quarrels that do not concern them at all." Dkt. 355 at 7 (quoting *Longshoremen*, 456 U.S. at 225 (1982)); *see also Hospital & Service Employees Union, Local 399, Service Employees Int'l Union, AFL-CIO v. N.L.R.B.*, 743 F.2d 1417, 1424 (9th Cir. 1984) (noting that the purpose of § 8(b)(4) is "sheilding . . . unoffending employers and others from pressures in controversies not their own."). As Judge Learned Hand explained:

> The gravamen of a secondary boycott is that its sanctions bear, not upon the employer who alone is a party to the dispute, but upon some third party who has no concern in it. Its aim is to compel him to stop his business with the employer in the hope that this will induce the employer to give in to [the union's] demands.

*Pepsi-Cola Co. v. Rhode Island Carpenters Dist. Council*, 962 F. Supp. 266 (D. R. I., 1997) (quoting *Int'l Bhd. of Elec. Workers, Local 501 v. NLRB*, 181 F.2d 34, 37 (2d Cir. 1950), *aff'd*, 341 U.S. 694 (1951).

More recently, but still consistent with Learned Hand's sentiment, the United States Supreme Court held that the secondary boycott provisions were designed to prevent unions from imposing "a heavy burden on neutral employers" when the union's sole complaint is with the primary employer. *Longshoremen*, 456 U.S. at 223. The Carpenters contend that Silver Cloud improperly relies on the holding of *Longshoreman* and that the Supreme Court "merely held that it was not 'a defense to the application of § 8(b)(4) that the reason for the [union's] boycott was not a labor dispute with a primary employer but a political dispute with a foreign nation.'"

However, the Carpenters incorrectly limit the holding in *Longshoremen* by merely lifting a section of that case and ignoring the Supreme Court's reasoning that immediately precedes the section quoted by the Carpenters. In *Longshoremen*, the Supreme Court held that the union's activities constituted an illegal secondary boycott under § 8(b)(4), providing the following reasoning:

> We think it plain that the ILA was not engaged in primary activity and that the boycott against Allied's goods was *"calculated to satisfy union objectives elsewhere."* The ILA concedes it has no dispute with Clark, Waterman or Allied, and there is no suggestion that it seeks to affect the labor relations of any of these employers. *It is also plain that these unoffending employers have been embroiled in a "controversy not their own" as a result of union action . . . .*

*Id*. (quoting *Allied Int'l, v. Int'l Longshoremen's Ass'n, AFL-CIO*, 640 F.2d 1368, 1377 (1st Cir. 1981) (emphasis added)). The Supreme Court agreed with the First Circuit's statement that "[i]t is difficult to imagine a situation that falls more squarely within the scope of Section 8(b)(4) . . . ." Thus, *Longshoremen* instructs that Silver Cloud can prevail on its § 8(b)(4) claim by establishing that it was a neutral, unoffending employer that was embroiled in a controversy that was not its own as a result of the union's secondary activities. *See id*.

ORDER - 9

1   The Carpenters counter by relying on a line of cases in which bannering, letter

2   writing, and leafleting very similar to that employed here, was held by the courts to be

3   lawful, protected by the First Amendment and, therefore, not in violation of  § 8(b)(4).

4   *See, e.g.,* Dkt. 277 at 5. Indeed, the language and objects used to carry out their

5   demonstrations in this case were very similar, if not identical, to the means discussed in

6   the line of cases on which the Carpenters rely.

7       Such reliance is misplaced because each of these cases is factually distinguishable.

8   In each case cited by the Carpenters, the secondary employer had at least some direct or

9   indirect relationship with the primary employer for which the union had a dispute, or the

10  demonstrations took place at the site of the primary dispute. *See, e.g., Edward J.*

11  *Debartolo Corp. v. Florida Gulf Coast Building and Constr. Trades Council*, 485 U.S.

12  586 (1988) (union's handbilling at same situs as the primary employer with whom union

13  had a dispute); *Sheet Metal Workers' Int'l Ass., Local 15, AFL-CIO v. N.L.R.B.*, 491 F.3d

14  429 (D.C. Cir. 2007) (secondary employer hospital had directly contracted with

15  non-union primary employer); *Overstreet v. United Brotherhood of Carpenters and*

16  *Joiners of America, Local Union No. 1506*, 409 F.3d 1199 (9th Cir. 2005) (secondary

17  employer retailers had contracted directly with primary employer construction

18  companies); *Laborers Int'l Union of North America, Local 332 and C.D.G., Inc.*, 305

19  N.L.R.B 298 (1991) (union's leafleting at same situs as primary employer construction

20  company); *Gold v. Mid-Atlantic Regional Council of Carpenters*, 407 F. Supp. 2d 719 (D.

21  Md. 2005) (secondary employer contracted directly with a general contractor who

22  contracted with primary employer subcontractor; union's actions were at same situs as the

23  primary employer); *Benson v. United Broth. of Carpenters and Joiners, Locals 184 and*

24  *1498*, 337 F. Supp. 2d 1275 (D. Utah 2004) (secondary employer had "chosen" to do

business with primary employer); *Kohn v. Southwest Regional Council of Carpenters*, 289 F. Supp. 2d 1155 (C.D. Cal. 2003) (secondary employer had contracted directly with a general contractor who contracted with primary employer subcontractor; union's actions were at same situs as primary employer).

In the present matter, no facts have been presented that would establish that a sufficient relationship existed between Rain City and Silver Cloud that would authorize the Carpenters' activities in this instance. Indeed, the facts establish the opposite. Rain City is a subcontractor hired by Point Ruston to work on projects that do not concern Silver Cloud. Silver Cloud has only an option to build a hotel in the future at the Point Ruston site. Silver Cloud has no arrangement with Rain City. The Carpenters' sole dispute lies with Rain City, except for perhaps a secondary dispute with Point Ruston. On February 24, 2009, Korbein sent a letter to the Carpenters informing them of the absence of any dispute with Silver Cloud and requested that the demonstrations at his Seattle hotels be discontinued. Weise Dep. Ex. 15. However, demonstrations continued through March 23, 2009 at the Stadium hotel and a day later at the Broadway hotel. *See e.g.,* Weise. Tr. 10:25; 11:1-7; 125:14-25; 126:1-5; 195:1-7. The only dispute with Silver Cloud is the "labor dispute" manufactured by the Carpenters.

Based on the foregoing, the Court concludes that no reasonable juror could come to any other conclusion than to find that the Carpenters embroiled Silver Cloud it its dispute with Rain City, the primary employer, an entity for which Silver Cloud had no relationship and was therefore neutral. *See, e.g.,* Dkt. 355 at 9. The Carpenters' action, much like the illegal conduct struck down in *Longshoremen*, was "calculated to achieve union objectives elsewhere." *Longshoremen*, 456 U.S. at 223. Thus, given the totality of the circumstances, the Carpenters violated § 8(b)(4), which thereby prevents the

Carpenters from seeking protection under the First Amendment for these actions. In short, Silver Cloud is the helpless victim that the *Longshoremen* Court determined § 8(b)(4) was designed to protect from becoming embroiled in "quarrels that do not concern them at all." *See id.*

Therefore, the Court grants Silver Cloud's motion for partial summary judgment on this issue as to liability (Dkt. 355). The issue of damages has been sufficiently pled and remains an issue for the jury. *See Maxey v. Butchers' Union Local No. 126*, 627 F.2d 912, 915 (9th Cir. 1980) (issue of damages is a question of fact). The Court denies the Carpenters' motion for summary judgment on this issue (Dkt. 216).

**C.      Cross Motion, Defamation Claim – Silver Cloud**

Silver Cloud moves the Court to grant partial summary judgment on its state law defamation claim, as to liability but not damages. Dkt. 355 at 15. The Carpenters oppose this motion and move for summary judgment on the issue of defamation. The parties agree that the basis for Silver Cloud's defamation claim rests on the language used in the banners, handbills, and the letter discussed above.

The Carpenters oppose Silver Cloud's motion on the basis that their actions are subject to standards applicable to labor disputes. *See* Dkt. 268. However, the Carpenters essentially admit that they were not, at all relevant times, in a labor dispute with Silver Cloud. *See* Dkt. 304 at 5. The Carpenters assert that Silver Cloud's unwillingness to agree not to employ Rain City for future work creates a labor dispute and thereby invokes the actual malice standard applicable to such defamation actions. *Id*; *see also Steam Press Holdings v. Hawaii Teamsters, Local 996*, 302 F.3d 998, 1004 (9th Cir. 2002) (requiring actual malice to be established in a state-law defamation action predicated on statements made during the course of a labor dispute).

Because the Carpenters fail to establish the existence of a labor dispute with Silver Cloud, the actual malice standard does not apply in this case with respect to Silver Cloud's defamation action. Therefore, Washington's law on defamation applies.

Although the Carpenters' briefing proceeds strictly under the assumption that Silver Cloud must establish actual malice, they do make sufficiently supported arguments regarding the truthfulness of the disputed materials (i.e., the letter, banners, and handbills). *See e.g.,* Dkt. 268 (Carpenters motion). Silver Cloud also makes sufficiently supported arguments about the falsity of the disputed materials. Dkt. 355 (Silver Cloud's motion). Indeed, the parties' respective positions rely on their interpretation of the language used, which leaves the question open to a reasonable juror's interpretation of the same language. Therefore, a material question of fact exists as to whether these disputed materials constitute defamation under the applicable standards, which is a question for the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986) (a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth).

Therefore, the Court denies both parties' motions for summary judgment on this issue. Silver Cloud's defamation claim and any damages that may be found to emanate there from remains a question for the jury.

**D.    Motion to Strike**

**1.    Jordan Thomas and Mark Lee**

In its reply to Silver Cloud's opposition, the Carpenters move to strike the declarations of Jordan Thomas and Mark Lee. Dkt. 277 at 2. As a preliminary matter, the Court has not relied on these declarations in making its rulings herein. However, because their respective declarations and/or trial testimony may be pertinent to the issue of

damages, should Silver Cloud prevail in its claims, the Court addresses this motion to strike herein.

The Carpenters move to strike these declarations "because these witnesses were never disclosed" to the Carpenters. *Id*. The Carpenters point out, and Silver Cloud does not dispute, that Jordan Thomas and Mark Lee were not identified in the amended initial disclosures and that they were not disclosed as Rule 30(b)(6) witnesses.

In opposition to this motion, Silver Cloud contends that the Carpenters became aware of Lee and information that he may have while deposing Silver Cloud's general manager, Weise, on March 9, 2010. *See* Weise Tr. 207-08. Additionally, it is contended by Silver Cloud that anything Lee or Thomas have knowledge of was given in Weise's deposition.

The Court concludes that striking these declarations is unnecessary. However, should the Carpenters wish to depose Lee or Thomas, the cost of doing so will be borne by Silver Cloud. In the event Silver Cloud does not intend to use Lee or Thomas or their declarations for trial, this issue is moot.

### 2.    Loren Cohen, Legal Conclusion

The Carpenters also move to strike what they allege is a legal conclusion in paragraph 3 of Loren Cohen's deposition. Dkt. 277 at 4. This paragraph is a statement by Loren Cohen that Rain City "is the employer with whom the Carpenter Defendants have a primary dispute." Dkt. 238 ¶ 3.

Because the Court reaches the same conclusion herein without use of Loren Cohen's conclusion, this issue is moot. Therefore, the motion to strike is denied.

## IV. ORDER

Therefore, it is hereby ordered that

(1)     The Carpenters' motion for summary judgment on Silver Cloud's § 303

        claim (Dkt. 216) is **DENIED**;

(2)     The Carpenters' motion for summary judgment (Dkt. 268) on Silver

        Cloud's defamation claim is **DENIED**;

(3)     Silver Cloud's motion for partial summary judgment on its § 303 claim

        (Dkt. 355) is **GRANTED**, as to liability only;

(4)     Silver Cloud's motion for partial summary judgment on its defamation

        claim is **DENIED**; and

(5)     The Carpenters' motions to strike are **DENIED** as discussed herein.

(6)     The issues left open in this order remain for the jury as discussed herein.

DATED this 8th day of September, 2010.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 15