1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

POINT RUSTON, LLC, et al.,

9

                    Plaintiffs,

10                                                      CASE NO. C09-5232BHS

11         v.

12   PACIFIC NORTHWEST REGIONAL              ORDER ON DEFENDANTS'
     COUNCIL OF THE UNITED                   MOTIONS IN LIMINE
13   BROTHERHOOD OF CARPENTERS
     AND JOINERS OF AMERICA, et al.,
14
                    Defendants.
15

16         This matter comes before the Court on Defendants' ("the Carpenters") motions in

17   limine (Dkt. 416). The Court has considered the pleadings filed in support of and in

18   opposition to the motion and the remainder of the file and hereby grants in part and denies

19   in part the motions in limine for the reasons stated herein.

20                    **I. FACTUAL AND PROCEDURAL BACKGROUND**

21         On August 30, 2010, the Carpenters filed their motions in limine. (Dkt. 416). On

22   September 7, 2010, Plaintiffs filed their response in opposition to the Carpenters' motions

23   in limine. Dkt. 419. On September 10, 2010, the Carpenters replied.

24
25         On September 13, 2010, the Court entered rulings on some of the parties' motions

26   in limine and reserved judgment several of the Carpenters' motions.

27
28

ORDER - 1

## II. DISCUSSION

This order pertains to the Carpenters' motions in limine Nos. 5, 6, 7, and 8.

**A.     Evidence of Carpenters as Corrupt, Criminal, or Aggressive, No. 5**

The Carpenters move the Court to exclude any evidence or allusions to the Carpenters as being a corrupt, criminal, or aggressive organization. Dkt. 416 at 8 (discussing New York racketeering charges filed against the Carpenters in an unrelated matter and the prohibition against character evidence, Fed. R. Evid. 404). In opposition, Plaintiffs note that they have "no intention of introducing testimony regarding racketeering charges against Carpenter leaders in New York." Dkt. 419 at 5. Plaintiffs also note that they do not "intend to introduce inadmissible character evidence regarding [the Carpenters'] reputation." Thus, these points are no longer at issue within the motion in limine No. 5.

Plaintiffs do, however, "intend to introduce evidence . . . of corrupt, criminal or aggressive acts with respect to the events at issue, including [the Carpenters'] behavior while bannering, handbilling, picketing, and engaging in other demonstrations against [Point Ruston and Silver Cloud]." *Id*. at 5. Based on such evidence, Plaintiffs contend it is not improper to argue that the Carpenters are corrupt, criminal, or aggressive.

This case involves allegations of (1) an illegal secondary boycott and (2) defamation. Because this case does not involve criminal or corruption charges, such is not the proper subject of argument. Further such argument would only be meant to inflame the jury, which is more unfairly prejudicial than probative and, therefore, not admissible under a Rule 403 balancing analysis. Fed. R. Evid. 403. To the extent evidence of the Carpenters' behavior can be attributed to the allegations of a section 8(b)(4) violation (i.e., threat, coerce, restrain) or to defamation (e.g., establishing actual malice), such evidence and argument will be permitted.

ORDER - 2

1
2
3
4
5
6
7
8
9
10
11
12

Plaintiffs also intend to introduce evidence of a consent decree ordered by an Oregon court in a wholly unrelated matter. Dkt. 420-1 (copy of consent decree). Although the consent decree concerns the Carpenters and allegations of a secondary boycott, the consent decree has no relation to the events of the present matter. *See id.* The consent decree did not constitute judgment against the Carpenters. *Id.* The introduction to the consent decree makes clear that the Carpenters and the other defendants signing the consent decree "[deny] any wrongdoing or liability and contend that they have at all times acted within the scope of the law." *Id.* at 2. Further still, section 2 of the consent decree ("Scope . . . of Consent Decree") limits the operative effect of the decree to the named plaintiffs and defendants, which does not include Plaintiffs. *Id.* at 3; *see also id.* at 9 ¶ 33 (limiting recourse for breach of the consent decree to the parties to the consent decree).

13
14
15

Therefore, evidence of the consent decree will not be permitted in this trial. *See Karamas v. Security Gas & Oil, Inc.*, 672 F.2d 766, 772 (9th Cir. 1982) (affirming exclusion of consent decree involving defendants in a prior, unrelated case).

16

**B.      Damage Testimony, No. 6**

17
18
19
20
21

This motion is limited specifically to Point Ruston's and Michael Cohen's claims for damages. The Carpenters move the Court to exclude evidence of lost profits based on the testimony of Michael Cohen, Loren Cohen ("the Cohens"), and/or Leanne Yester ("Yester") based on marketing and research or summaries of charts representing costs and losses sustained by Point Ruston. *See* Dkt. 416 at 14; *see also* Dkt. 439 at 6-7.

22
23
24
25

To begin with, the Court notes that neither party has put forth an expert to testify in regard to damages. Any testimony regarding damages in this case is, therefore, limited to lay testimony based on personal knowledge. Federal Rule of Evidence 701 provides as follows:

26
27
28

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b)

ORDER - 3

1
2

> helpful to a clear understanding of the witness' testimony or the
> determination of a fact in issue, and (c) not based on scientific, technical or
> other specialized knowledge within the scope of Rule 702.

3

4

Fed. R. Evid. 702. The personal knowledge requirement stems from Federal Rule of

Evidence 602, which states the following:

5

6

7

> A witness may not testify to a matter unless evidence is introduced
> sufficient to support a finding that the witness has personal knowledge of
> the matter. Evidence of personal knowledge may, but need not, consist of
> the witness' own testimony. This Rule is subject to the provisions of Rule
> 703, relating to opinion testimony by expert witnesses.

8

Fed. R. Evid. 602.

9

10

The Carpenters argue that, while the courts have permitted owners and officers to

11

testify to lost profits without being qualified as an expert, the courts also require an

12

adequate foundation to be established that evidences the owner/officer's personal

13

knowlege of their respective business on which they relied to estimate profits. Dkt. 439 at

14

7.  The Carpenters contend that if the owner/officer "cannot do the math then he cannot

15

testify as to what the bottom line number should be . . . ." *Id.* (quoting *Nationwide*

16

*Transp. Fin. v. Cass. Info. Sys.*, 2006 WL 5242377).

17

The Carpenters cite this unpublished case for the proposition that Point Ruston was

18

a new business and that neither the Cohens nor Yester can adequately testify as to lost

19

profits of a new business. *See* Dkt. 439 at 6-7. However, in discussing damages,

20

*Nationwide* relied on the Third Circuit's decision in *Lighting Lube, Inc. v. Witco Corp*, 4

21

F.3d 1153 (3rd Cir. 1993). *Lighting Lube* was a New Jersey case and concerned a New

22

Jersey "new business rule." Nonetheless, the Third Circuit discussed that

23

24

25

> New Jersey no longer adheres to its "new business rule" which, as
> embodied in several older New Jersey cases, indicated that lost profits of a
> new business are too remote and speculative to permit an award of
> damages.

26

*Lighting Lube*, 4 F.3d at 1176 (citations omitted). The *Lighting Lube* court also discussed

27

a plaintiff's burden for proving damages to a reasonable certainty, which is the standard

28

ORDER - 4

1    to be applied in the present matter. *See id*. In applying the standards set out in *Lighting*

2    *Lube*, the Third Circuit concluded

3
        that Lightning Lube established the amount of damages to a reasonable
4       certainty. While it may be that Venuto's testimony could not have sustained
        an award of $70 million in future lost profits, nonetheless the jury could
5       have concluded reasonably that Lightning Lube would have earned $7
        million over the ten-year period.
6
     *Id*. Based on the foregoing, the Carpenters reliance on *Nationwide* is misplaced as it does
7
     not stand for its purported proposition once its underlying precedent is examined.
8
         The Carpenters next rely on *U.S. Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687,
9
10   690 (8th Cir. 2009). In the portion relied upon by the Carpenters, the Eighth Circuit held

11   that

12      Johnson's proposed testimony regarding lost profits amounts to speculation
        and conjecture because he failed to perform any analysis of a viable market
13      for the solar salt he expected to receive from Broken Arrow and he lacked
        relevant and recent activity in the solar salt market. *See Marvin Lumber &*
14      *Cedar Co. v. PPG Indus., Inc.*, 401 F.3d 901, 914 (8th Cir. 2005) (damages
        based on future lost profits may not be "remote, speculative, or conjectural"
15      and "must be proved with a reasonable degree of certainty and exactness";
        "[a]bsolute exactitude" of future losses is not required (internal quotations
16      omitted)).

17   *Id*. at 690.

18       While this section of the case is facially appealing, its purported proposition is

19   weakened when one reads the next sentence in the opinion, which the Carpenters did not

20   cite. There, the Eighth Circuit described that

21      the record demonstrates that Johnson could *not identify any customer*
        *interested in buying from U.S. Salt a specific amount of solar salt at a*
22      *specific price* and that U.S. Salt had not been active in the solar salt market
        since the late 1980s. See *Mostly Media, Inc. v. U.S. W. Commc'ns*, 186 F.3d
23      864, 866-67 (8th Cir.1999) (agreeing with district court that business
        owner's proof of damages was too speculative where business owner merely
24      relied upon anticipated profit of business without any underlying supportive
        data); *Hammann v. 1-800 Ideas.com, Inc.*, 455 F. Supp. 2d 942, 948 (D.
25      Minn. 2006) ("Damages for lost profits, especially for a relatively new
        business venture, must be supported by specific, concrete evidence, not by
26      mere speculation and conjecture." (internal quotations omitted)).

27   *Id*. (emphasis added).
28

ORDER - 5

Considering the foregoing, the Court will require that any testimony offered in regard to lost profits by the Cohens and/or Yester must be premised upon adequate foundation, which includes being able to provide specific, concrete evidence regarding lost future profits. The Cohens and/or Yester could rely on evidence of, among other things, customers that were interested in buying from Point Ruston a specific item at a specific price who then decided not to buy considering the events at issue in this case. *See* 563 F.3d at 690. Similar to the case in *Lighting Lube*, Point Ruston might not be able to establish losses of $45 million but might be able to establish losses of $4.5 million. *See* 4 F.3d at 1176.

**C.     Damages Testimony, No. 7**

Defendants' motion in limine No. 7 pertains only to Silver Cloud's claimed damages. The Carpenters move the Court to exclude evidence of Star Reports (hotel industry report) and lay testimony as to damages allegedly sustained by Silver Cloud. Dkt. 416 at 14. The Carpenters contend that Silver Cloud has never produced any past profit and loss statements to substantiate its claims that the twenty-four days of bannering and flyer distribution at the Seattle hotel(s) cost Silver Cloud damages of $1 million. Dkt. 416 at 15. The Carpenters also contend that the Star Report(s) constitute inadmissible hearsay.

In opposition, Silver Cloud reincorporates their arguments for permitting Point Ruston to testify regarding its damages, discussed above. Silver Cloud also maintains that the Star Report(s), while hearsay, are admissible as "market reports" and "commercial publications" under Fed R. Evid. 803(17). Silver Cloud intends to elicit testimony from its CEO, Billy Weise, to substantiate its claims of lost profits.

To begin with, the Court notes that the Star Report(s) at issue would likely be admissible under Evidence Rule 803(17), as the report(s) would appear to be a published compilation generally used and relied upon by persons in particular occupations (e.g.,

ORDER - 6

hoteliers). *See* Fed. R. Evid. 803(17) (note to paragraph (17) details that "[t]he basis of trustworthiness is general reliance" by a particular segment of the public); *see also McDonald v. Johnson & Johnson*, 537 F. Supp. 1282 (D.C. Minn. 1982), *aff'd in part, vacated in part*, 722 F.2d 1370, *cert denied*, 469 U.S. 870 (1984) (admitting a report used in computing projected sales and relied on as important information for marketing by executive staff of members of a manufacturing corporation). Therefore, the Court rejects the Carpenters' hearsay argument, to the extent proper foundation could be laid by Silver Cloud as to the trustworthiness of the Star Report(s).

Significantly, however, Silver Cloud does not dispute that it has yet to provide any profit and loss statements from Silver Cloud's accounting records. By putting the alleged damages at issue, Silver Cloud has implicitly put its prior earnings at issue. While the Court acknowledges that there is a public policy against unnecessary public disclosure of income tax returns, *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975), the confidentiality of tax returns may be preserved through a protective order. *Stokwitz v. United States*, 831 F.2d 893, 896 (9th Cir. 1987), *cert. denied*, 485 U.S. 1033 (1988). Therefore, even if the Court were to permit Mr. Weise to testify regarding damages and to support such claims, at least in part, with the Star Reports, it is imperative that the Carpenters have some means to attempt to defend themselves against the claims of Silver Cloud. Such means would come in the form of documents such as income statements from prior years.

Based on the foregoing, Silver Cloud will be held to the same burden in proving damages as Point Ruston. In order to rely on the Star Report(s), however, Silver Cloud must demonstrate that it timely provided the Carpenters with sufficient and adequate information regarding its internal financial records such that the Carpenters could have had an opportunity to formulate their defense to Silver Cloud's claim for damages.

**D.     Evidence of Other Disputes, No. 8**

The Carpenters move to exclude evidence or allusions to other Carpenter labor disputes or lawsuits. Dkt. 416 at 19. To the extent Plaintiffs seek to introduce evidence of the Oregon consent decree, such evidence is excluded for the reasons discussed above.

Plaintiffs also seek to introduce evidence of conversations between the Carpenters and persons related to the instant dispute that involved discussions of other disputes and lawsuits the Carpenters were involved in. Provided the evidence is otherwise admissible, such evidence will be permitted to the extent it arises out of the facts and circumstances of the instant matter.

### III. ORDER

Therefore, it is hereby **ORDERED** that the Carpenters' motions in limine Nos. 5, 6, 7, and 8 are **GRANTED in part** and **DENIED in part** as discussed herein.

DATED this 17th day of September, 2010.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 8