UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

POINT RUSTON, LLC, et al.,

    Plaintiffs,

v.

PACIFIC NORTHWEST REGIONAL COUNCIL OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, et al.,

    Defendants.

CASE NO. C09-5232BHS

ORDER ON DEFENDANTS' ADDITIONAL MOTIONS IN LIMINE, LIMITED PUBLIC FIGURE MOTION, AND REQUEST FOR JUDICIAL NOTICE

This matter comes before the Court on Defendants' ("the Carpenters") motions and pleadings filed on September 17, 2008 (Dkts. 449, 451, 455, 456, 459, and 462). The Court has considered these pleadings and the remainder of the file and hereby grants and denies the Carpenters requests and motions as discussed herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 17, 2010, the Carpenters filed the following pleadings: (1) a motion in limine regarding immigration status (Dkt. 449); (2) a motion in limine to sever and/or bifurcate trial (Dkt. 451); (3) a limited public figure motion (Dkt. 455); (4) a request for judicial notice (Dkt. 456); (5) a motion in limine to preclude inadmissible damage testimony and documents (Dkt. 459); and (6) a motion in limine regarding Point Ruston's conversion claim (Dkt. 462). The Court considered Point Ruston's responses in opposition and the Carpenters' replies, to the extent filed as of the date of this order.

ORDER - 1

## II. DISCUSSION

### A. Immigration Status

The Carpenters move the Court to bar Point Ruston, its witnesses, and its counsel from "offering any evidence, reference, or argument related to and to preclude any mention" of the Carpenters or its witnesses' "immigration status (collectively 'immigration status')." Dkt. 449 at 2. The Carpenters argue that immigration status is irrelevant and would nonetheless be highly prejudicial as compared to any marginal relevance when balanced under Rule 403. *See* Fed. R. Evid 401 (relevance), 403 (balancing inquiry).

The Court grants this motion with the following clarification. The motion is limited to any evidence, reference, or argument specifically related to legality or illegality of a person's immigration status. For example simply stating that a person is from Mexico or does not speak English will not violate this order and will not be considered an implied reference or otherwise as to immigration status. The nature of this case and the evidence needed by both parties will not permit such a restrictive and unnecessary ruling.

### B. Sever and/or Bifurcate Trial

The Carpenters move the Court to sever and/or bifurcate the trial in this matter as between Silver Cloud's claims and Point Ruston's claims. Dkt. 451. A district court is vested with discretion to grant or deny such a motion. *See United States v. Nguyen*, 88 F.3d 812, 818 (9th Cir. 1996). This motion is untimely at this stage of litigation and any concern may be cured through a limiting instruction and special verdict forms for the jury. Therefore, the Court denies this motion. The Carpenters are permitted to submit a proposed limiting instruction should they choose to do so.

Additionally, within this motion to sever/bifurcate, the Carpenters make the following claim

> . . . the Court was incorrect in its ruling regarding Silver Cloud's section 303 liability. In order to establish Section 303 liability, Silver Cloud

ORDER - 2

>must show, among other things, (1) an improper object of embroiling a neutral in primary dispute *and* (2) [sic] some type of coercive conduct. The Court while finding that the [Carpenters] did have an improper object, then proceeded to find Section 303 liability without determination that Section 303 exists will lead the jury to believe that coercive conduct was shown . . . ."

Dkt. 451 at 4-5, n. 2 (emphasis in original).

To begin with, the finding of an improper object must be coupled with a finding that the Carpenters conduct was intended to "threaten, coerce, *or* restrain . . . ." The use of "or" is disjunctive and means that coercive conduct is not the only means of violating Section 303 when combined with an improper object, e.g., "forcing or requiring any person to cease . . . doing business with any other person . . . ." *See* Dkt. 430 (order on summary judgment regarding Silver Cloud).

The Court did conclude that the Carpenters acts of writing a threatening letter that was followed by the threatened conduct with the improper object getting Silver Cloud embroiled in a controversy that was not their own violated Section 8(b)(4) and exposed the Carpenters to liability for Section 303 damages. *See generally* Dkt. 430. To the extent the Court's order was not express enough, the Court now reexpresses its ruling on summary judgment: The Carpenters conduct with respect to Silver Cloud (letter, banner, leaflet, and demonstrations in general) was threatening if not coercive and was done with an improper object of attempting to get Silver Cloud to inject itself into the controversy to get Point Ruston to cease doing business with Rain City. *See, e.g.,* Dkt. 430. The Court, in making its ruling, determined that there is no question of fact, given the context of this case, that the Carpenters engaged in the threatening conduct with an improper object for any other purpose than that which violates § 8(b)(4), thereby giving rise to Silver Cloud's § 303 damages claim. The Carpenters have misconstrued both the law and this Court's order on this issue.

ORDER - 3

**C.     Limited Public Figure**

The Carpenters move the Court to apply the *New York Times* actual malice standard with respect to Silver Cloud. The Carpenters contend that Silver Cloud "voluntarily inject[ed]" itself into a matter of public concern when it issued press releases regarding its intent to build the Point Ruston Silver Cloud hotel, an option it acquired but has not yet exercised. *See* Dkt. 430 at 11 (denying the Carpenters motion for summary judgment with respect to Silver Cloud). In making its case for applying the malice standard, the Carpenters rely heavily on *Clardy v. Cowles Publishing*, 81 Wn.App. 53 (1996). Dkt. 455 at 2.

In *Clardy*, the Washington State Appellate Court introduced the case as follows:

> A public figure must prove actual malice to recover for defamation. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 84 S.Ct. 710, 726 (1964). A public figure is one who has attained special "prominence in the affairs of society." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).  A public figure is one who has attained special "prominence in the affairs of society." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). A person may be a public figure for all purposes or for a limited purpose. *Gertz*, 418 U.S. at 351.
>
> John D. Clardy spearheaded the Mission Springs development, the biggest planned unit development ever proposed for Spokane County. It had an ultimate mortgage value of $45 million. On behalf of Mission Springs Limited Partnership, Mr. Clardy applied for mortgage insurance through the United States Department of Housing and Urban Development (HUD). *The development ran into vocal public opposition* after it had been approved, but before HUD had committed to insure financing. *Mr. Clardy stepped into the hailstorm by attending a meeting with the opposition leader*, speaking out in favor of the project, and contacting public officials, all in an attempt to keep the HUD commitment on track. We are asked to decide whether Mr. Clardy became a limited-purpose public figure by his involvement in the Mission Springs project. We conclude that he did and affirm the superior court's summary dismissal of his defamation claim.

*Clardy*, 81 Wn. App. at 53 (emphasis added). The Court went on to describe the limited public figure doctrine:

> *Gertz* set up two categories of public figures: limited-purpose public figures and general-purpose public figures. Limited-purpose public figures are those who voluntarily inject themselves or are drawn into a public controversy and thereby become public figures for a limited range of issues. The threshold question posed in *Gertz* is whether the defamatory statement

ORDER - 4

> involves a matter of public concern. The next focuses on the nature and extent of the plaintiff's participation in that public controversy. *Gertz*, 418 U.S. at 352 ("*did he engage the public's attention in an attempt to influence its outcome*" and did he "*thrust himself into the vortex of this public issue*").

*Id.* at 59 (emphasis added, citations omitted).

The Court agrees that the issues surrounding the Point Ruston development pass the threshold question as to whether the allegedly defamatory statements involved a matter of public concern. However, that is where the similarities between *Clardy* and this matter diverge.

In *Clardy*, the individual claiming to have been defamed stepped into the public light once the development came under a public firestorm of controversy. In contradistinction, no evidence has been presented that Silver Cloud did anything of the sort in this case. The Carpenters merely rely on the fact that Silver Cloud chose to issue press releases that expressly associate it with the Point Ruston project. However, much if not all of these associating facts preceded the moment when Point Ruston's project became embroiled in a public controversy.

In fact, the Court's prior order concluded that it was the Carpenters who thrust Silver Cloud onto the public stage with their demonstrations regarding an entity that merely had an option to build a hotel at a controversial job site, Point Ruston's job site. *See, e.g.,* Dkt. 430. In short, no evidence has ever been presented that Silver Cloud engaged "*the public's attention in an attempt to influence its outcome*" or that it "*thrust [itself] into the vortex of this public issue.*" *See Gertz*, 418 U.S. at 352.

The Carpenters' reliance on *Clardy* is misplaced. Because the Court concludes that the *New York Times* actual malice standard does not apply with respect to Silver Cloud, this motion is denied.

ORDER - 5

**D.     Judicial Notice**

The Carpenters move the Court to take judicial notice of the fact that the option agreement between Silver Cloud and Point Ruston has been treated by the Plaintiffs as confidential. The Court has previously ordered this document sealed because it was deemed to be confidential. *See, e.g.,* Dkt. 359 at 3 ¶ 2.

While the Court finds this request both unnecessary and nonstandard, it reserves judgment on this issue until the September 23, 2010, pretrial conference.

**E.     Inadmissible Damage Testimony/Documents**

The Carpenters move to prohibit certain documentary and testimonial evidence from Point Ruston on the issue of damages. Dkt. 459. With respect to this issue, the Court ordered an offer of proof to be made at the September 23, 2010, pretrial conference. Therefore, ruling on this issue is reserved until that time.

**F.     Preemption of Conversion Claim**

The Carpenters move the Court to conclude that Point Ruston's state law conversion claim is completely preempted by Section 303. With respect to complete preemption, the Court already adopted the Seventh Circuit's approach in *Smart*, which held that Section 303 completely preempts state law claims related to secondary boycott activities described in Section 158(b)(4). *See* Dkt. 76 at 14; *See also Smart v. Local 702 IBEW*, 562 F.3d 798 (7th Cir. 2009) ("Congress has provided an explicit means of redressing alleged violations of section 158(b)(4) through section 187 of Title 29"). In the Court's prior order (Dkt. 76), it determined that *Smart* stands for the proposition that state law claims for damages are preempted by section 303 when the party "seek[s] damages for conduct already prohibited by Section 158(b)(4).

During the September 13, 2010, pretrial conference, Point Ruston represented to the Court that it seeks damages for conversion based on the Carpenters bannering activities where they caused the banners to obstruct or obscure Point Ruston's sign(s) for

ORDER - 6

its development.[1] Even if Point Ruston could prevail on such a state claim the conduct at issue is that which § 158(b)(4) already provides redress under Point Ruston's allegations for secondary boycott activities.

Because Point Ruston's conversion claim is preempted, the Carpenters' motion in limine on this issue is granted.

### III. ORDER

Therefore, it is hereby **ORDERED** that

(1) The Carpenters' a motion in limine regarding immigration status (Dkt. 449) is **GRANTED**;

(2) The Carpenters motion in limine to sever and/or bifurcate trial (Dkt. 451) is **DENIED**;

(3) The Carpenters limited public figure motion (Dkt. 455) is **DENIED**;

(4) The Carpenters' request for judicial notice (Dkt. 456) is **RESERVED**;

(5) The Carpenters' motion in limine to preclude inadmissible damage testimony and documents (Dkt. 459) is **RESERVED**; and

(6) The Carpenters' motion in limine on conversion (Dkt. 462) is **GRANTED**.

DATED this 22nd day of September, 2010.

BENJAMIN H. SETTLE
United States District Judge

---

[1] To the extent Point Ruston had another basis on which to rest its conversion claim (other than the sign obstruction theory), such theories were not argued and, therefore, abandoned by Point Ruston in its brief to the Court addressing the Carpenters preemption argument as it pertained to conversion. *See* Dkt. 452 at 11-12.

ORDER - 7